1IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION


EDDIE B. ROBINSON, as *Administrator for*
*the Estate of Willie Robinson, Sr., Deceased*                                            PLAINTIFF

v.                                         Civil No. 1:14-cv-01051

EOR-ARK, LLC, *et al.*                                                                 DEFENDANTS


**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before this Court is, EOR-ARK, LLC; VAJ LLC; Senior Living Communities of Arkansas, LLC; SLC Operations Holdings, LLC; SLC Operations, LLC; Pine Hills Holdings, LLC; Pine Hills Health and Rehabilitation, LLC, d/b/a Pine Hills Health and Rehabilitation; SLC Operations Master Tenant, LLC; SLC Properties, LLC; SLC Property Holdings, LLC; SLC Property Investors, LLC; Arkansas Nursing Home Acquisition, LLC; CSCV Holdings, LLC; Capital Funding Group, Inc.; Capital Funding, LLC; Capital Finance, LLC; Capital Seniorcare Ventures, LLC; ADDIT, LLC; SLC Professionals of Arkansas, LLC, n/k/a SLC Professionals, LLC; Senior Vantage Point, LLC; 900 Magnolia Road SW, LLC; Quality Review, LLC; Arkansas SNF Operations Acquisition, LLC; SLC Professionals Holdings, LLC; and John Dwyer ("Defendants") Motion to Dismiss and Compel Arbitration. ECF No. 4. Plaintiff has filed a response to this Motion. ECF No. 6. The parties also filed Supplemental Briefing. ECF Nos. 34, 35. A hearing was held on this Motion on June 16, 2015. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) (2009), the Honorable Susan O. Hickey referred this Motion to this Court for the purpose of making a report and recommendation. In accordance with that referral, this Court enters the following report and recommendation.

**1. Background**

On April 26, 2010, upon his admission to Pine Hills Health and Rehabilitation, LLC ("Pine Hills"), Willie Robinson, Sr., signed an Arbitration Agreement. ECF No. 4, Pgs. 12-14. The Arbitration Agreement provides that all claims, disputes and controversies arising out of the Admission Agreement or any service or health care provided by the Facility are to be resolved exclusively by arbitration. *Id.* The Agreement further states arbitration shall be governed by and interpreted under the Federal Arbitration Act ("FAA"); and information may be obtained and claims may be filed at any office of the National Arbitration Forum ("NAF"). *Id.* The Agreement also contains a severance provision: "In the event a court having jurisdiction finds any portion of this agreement unenforceable, that portion shall not be effective and the remainder of the Agreement shall remain effective." *Id.*

On October 7, 2011, Willie Robinson Sr. passed away. Eddie B. Robinson, as Administrator for the Estate of Willie Robinson, Sr., deceased, ("Plaintiff") filed a complaint against Defendants alleging injuries and damages while he was a resident of Defendant Pine Hills. ECF No. 3. The Complaint alleges negligence, malpractice, and violations of the Arkansas Long Term Care Resident's Rights Statute. *Id.* The Complaint further alleges Defendants breached duties of care owed to Robinson under the Arkansas Medical Malpractice Act and the Arkansas Long Term Care Resident's Rights Statute, and had negligent hiring and staffing practices that caused personal injury and death to Robinson. *Id.*

On September 26, 2014, Defendants filed a Motion to Dismiss Complaint and Compel Arbitration. ECF. No. 4. It is undisputed Robinson's claims, and the damages requested, fall within the types of claims covered by the Arbitration Agreement. However, as of July 2009, the NAF, the forum designated in the Agreement, no longer processes or administers consumer-related arbitration

claims based upon pre-dispute agreements. ECF. No. 6, Exh. A. Therefore, the NAF is no longer available as a forum for Plaintiff's claims against Defendants. With this Motion, Defendants seek dismissal of Plaintiff's Complaint and referral of the issues to arbitration in accordance with the terms of the Arbitration agreement and the FAA. ECF No. 4.

**2. Applicable Law**

The party seeking to compel arbitration must first establish the contract containing the arbitration provision falls within the scope of the FAA. *Ark Diagnostic Dr. v. Tahiri*, 370 Ark. 157, 163, 257 S.W.3d 884, 890 (2007). Under the FAA, if the contract contains a valid arbitration provision that encompasses the dispute at issue, the Court must compel arbitration. *S. Pioneer Life lhs. Co. v. Thomas*, 2011 Ark. 490, 385 S.W. 3d 770, 772 (2011). The parties do not dispute that the claims, and the damages requested, fall within the types of claims covered by the Arbitration Agreement. Therefore the issue at dispute is whether a valid arbitration agreement exists.

**3. Discussion**

Plaintiff argues the Arbitration Agreement is not valid because: (A) it is unconscionable based on the fee structure, potential forgery of Robinson's signature, and public policy, (B) the non-signatory Defendants may not compel arbitration, and (C) the agreement is unenforceable because the National Arbitration Forum is no longer available to serve as arbitrator. ECF Nos. 6, 34.

A. Unconscionability of Agreement

Unconscionability is an exception to the general rule that a written agreement duly executed by the party to be bound will be enforced according to its terms. In assessing whether a particular contractual provision is unconscionable, the court must review the totality of the circumstances surrounding the negotiation and execution of the contract. *National Union Fire Ins. Co. of Pittsburgh, Pennsylvania v. Guardtronic, Inc.,* 76 Ark. App. 313, 320, 64 S.W.3d 779, 783 (2002).

Two important considerations include, 1) whether there is a gross inequality of bargaining power between the parties, and 2) whether the aggrieved party was made aware of and comprehended the provision in question.

### 1. Fee Structure

According to Plaintiff, the totality of the circumstances surrounding the fees adopted by the NAF Rules render this arbitration agreement unfair, unreasonable, and unconscionable. ECF No. 6, Pg. 9-14. According to Plaintiff, the NAF Large Claim Schedule require Plaintiff to pay up front filing, administrative, and commencement fees, which will equal or exceed $5000.00. *Id*. Further, additional fees will be assessed by the Forum for motions filed and for the Arbitrator's time spent on the case. Plaintiff argues compared to the small fee it took to file Plaintiff's Complaint in this matter, the thousands of dollars in fees the NAF Fee Schedule requires Plaintiff to advance just to file a claim in arbitration under this agreement are clearly unreasonable. *Id.*

As Defendant points out, the Arbitration Agreement states explicitly signing is voluntary, may be revoked within thirty days, and the resident has the right to seek advice from an attorney prior to signing. ECF No. 4, Pgs. 12-14. Further, the Agreement states in all caps and bold letters, that signing means the parties waive the right to a jury trial. *Id.*

A party attempting to avoid arbitration has the burden of showing that arbitration would be prohibitively expensive to avoid undermining the federal policy in favor of arbitration. *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91 (2000). Also, the Arkansas Supreme Court has expressly recognized that, overall, arbitration is less expensive and more expeditious than litigation. *Hart v. McChristian*, 344 Ark. 656, 662, 42 S.W.3d 552, 556-557 (2001). In this matter, Plaintiff has not met his burden of showing that arbitration would be prohibitively expensive.

Furthermore, the NAF fee structure is not fundamentally unfair because (1) it contains a

waiver of fees provision for indigent claimants, (2) upon request, another party may agree to pay all or part of the fees required of the consumer, and (3) the prevailing party may recover fees paid in the arbitration.  ECF No. 6, Pgs. 76-78.

### 2.  Signature of Robinson

Plaintiff argues there is "strong" evidence Willie Robinson could not have signed the Arbitration Agreement because he could not write his name, and while he signed documents in his life, he did not do so with his name, but rather, with an "X."  ECF No. 34, Pg. 12.  Plaintiff's only support for this argument is the testimony of Willie Robinson's son, Eddie Robinson, who stated his father could not write his name and never signed anything with more than a simple "X."  ECF No. 34-3, Pgs. 38-41.

To begin with, the Arbitration Agreement bears a signature of Willie Robinson.  ECF No. 4, Pgs. 13.  Also, Leslie Lewis-Boothe, the Social Services Director at Pine Hills at the time Willie Robinson was admitted as a resident, testified she was responsible for going through the admissions paperwork, including the Arbitration Agreement, with Willie Robinson and specifically remembers Willie Robinson's signature because he commented on the way he signed his name, and she recalls him signing the letters of his name.  ECF No. 35-1.

Defendants also established (1) Robinson's Medicare Health Insurance Card displays a signature that corresponds to his signature on the Arbitration Agreement, (2) patient sign out sheets display a signature of Robinson that matches the signature of the Arbitration Agreement, and (3) Expert testimony stating the handwriting on the Arbitration Agreement matches the signature on the sign out sheets.  ECF No. 35, Pgs. 7-9.

The overwhelming evidence establishes Willie Robinson did in fact sign the Arbitration agreement.

3.  Public Policy

Finally, Plaintiff argues the Arbitration Agreement should be deemed unconscionable as against public policy.  ECF No. 34, Pgs. 13-14.  Plaintiff argues enforcement of predispute arbitration agreements in nursing home claims violates public policy.  However, Plaintiff's argument has been specifically considered and rejected by the U.S. Supreme Court.

In *Marmet Health Care Center, Inc. v. Brown*, 132 S.Ct. 1201, 1203 (2012), the Supreme Court considered a West Virginia's Supreme Court of Appeals decision that effectively prohibited predispute arbitration agreements for personal injury and wrongful death claims against nursing homes.  The West Virginia court's decision was based on state public policy, and the West Virginia court decided the FAA did not displace this state public policy.  The U.S. Supreme Court reversed, holding:

> The West Virginia court's interpretation of the FAA was both incorrect and inconsistent with clear instruction in the precedents of this Court . . . West Virginia's prohibition against predispute agreements to arbitrate personal-injury or wrongful-death claims against nursing homes is a categorical rule prohibiting arbitration of a particular type of claim, and that rule is contrary to the terms and coverage of the FAA.

*Id.* at 1203–04.

The Arbitration Agreement in this matter is not unconscionable as against public policy.

B.  Non-signatory Defendants ability to compel arbitration

Plaintiff also argues the Arbitration Agreement does not bind and is not enforceable by all the Defendants in this action.  ECF No. 34, Pg. 2-4.  According to Plaintiff, the Arbitration Agreement is only enforceable by Defendant Pine Hills as they are the only party to the agreement.  *Id*.  Plaintiff states the agreement extends its benefits and binds the two named parties (Robinson and Pine Hills) and, with regard to the Pine Hills, its "successors, and assigns, including without limitation the agents, employees and servants of the Facility…." *Id.*

6

According to Plaintiff, Defendants have submitted no evidence that any of the other moving Defendants meet the definition of those persons entitled to benefit from or to be bound to the terms of the Arbitration Agreement and have not submitted any evidence that they constitute "successors," "assigns," "agents," "employees," or "servants" of Pine Hills.

As Defendants noted, Courts have routinely permitted non-signatories to an arbitration agreement compel arbitration where an opposing party alleged the non-signatories were alter egos or otherwise in an interdependent relationship with a signatory. *PRM Energy Sys., Inc. v. Primenergy, L.L.C.*, 592 F.3d 830, 836 (8th Cir. 2010) and *Searcy Healthcare Ctr., LLC v. Murphy*, No. CV-13-210, 2013 WL 6047164, (Ark. Nov. 14, 2013).

The allegations of Plaintiff's Complaint implicate the alternative/equitable estoppel doctrine. As in *Searcy*, Plaintiff here alleges the non-signatory Defendants "owned, operated, managed, controlled, and/or provided services for . . . Pine Hills Health and Rehabilitation Center during the residency of Willie Robinson, Sr." ECF No. 3, Pgs. 3-19. Plaintiff also alleges the named Defendants in this action acted together "through a joint venture, owned, operated, managed and controlled Pine Hills Health and Rehabilitation Center." ECF No. 3, Pg. 14. Finally, the complaint defines the terms "Defendants" and "Nursing Home Case Defendants" to include all of the named Defendants in this matter, and then the factual allegations and causes of action in the complaint are alleged collectively against the "Defendants" and "Nursing Home Defendants." ECF No. 3.

The Arbitration Agreement in this matter is enforceable by all the Defendants in this action.

### C. Unavailability of the National Arbitration Forum

Plaintiff's final argument is due to the unavailability of the NAF to arbitrate this matter, the Arbitration Agreement is not enforceable. ECF No. 6. According to Plaintiff, the Arbitration Agreement selects the NAF as the arbitrator. *Id.* However, due to a consent decree the NAF entered

into with the Minnesota Attorney General, the NAF no longer arbitrates consumer disputes and is unavailable to arbitrate this case. Because the NAF is unavailable, Plaintiff asserts the Arbitration Agreement is impossible to perform. *Id.*

The Arbitration Agreement specifically states it shall be governed by and interpreted under the FAA, 9 U.S.C. Sections 1-16. ECF No. 4, Pg. 12. Defendants argue Section 5 of the FAA requires a court to appoint an arbitrator when the parties' designated arbitrator is unavailable. ECF No. 7. Specifically, Section 5 provides:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein; or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under said agreement with same force and effect as if he or they had been specifically named therein.

9 U.S.C. § 5.

In *Diversicare Leasing Corp. v. Nowlin*, No. 11-CV-1037, 2011 WL 5827208, at *1 (W.D. Ark. Nov. 18, 2011), Judge Susan Hickey considered an arbitration agreement containing the exact same clause that appears in the Arbitration Agreement at issue in this matter. Both agreements contained language that stated claims "may be filed at any office of the National Arbitration Forum." Also, *Nowlin* involved a nursing-home / resident arbitration agreement as is the case in this matter. In *Nowlin,* Judge Hickey compelled the case to arbitration notwithstanding the "unavailability" of the NAF.

In considering the agreement to arbitrate in *Nowlin*, Judge Hickey noted the majority of courts who had addressed whether a substitute arbitrator could be appointed pursuant to Section 5 of the FAA had utilized the approach set out in *Brown v. ITT Consumer Financial Corp.*, 211 F.3d

8

1217 (11th Cir. 2000). In *Brown*, the court focused its inquiry on whether the reference to the forum named in the agreement was integral to the decision to arbitrate or merely a logistical or ancillary inclusion. *Id*. at 1222.

In compelling the matter to arbitration in *Nowlin*, Judge Hickey found the designation of the NAF as the arbitrator was not integral to the parties' decision to arbitrate and the plain language of the agreement shows the parties' primary and overriding concern was that claims in excess of $15,000 be submitted to arbitration, not that they be arbitrated with the NAF. *Id*. at *6. As Judge Hickey explained, if the NAF was "integral" to the arbitration agreement, the agreement would not have included a severance clause and reference to the NAF was minimal. *Id*. Judge Hickey also found the lack of pervasive references to the NAF, combined with the ability to file claims in any NAF office, distinguished the agreement from those where courts held the forum was integral. *Id*.

This same analysis applies to the Arbitration Agreement in the instant matter. The agreement at issue contains a severance clause, along with a permissive reference to the NAF stating claims may be filed at any office of the NAF. ECF No. 4, Pg. 12. The Arbitration Agreement's permissive language referring to the NAF is identical to the language contained in the arbitration agreement at issue in *Nowlin*. Also, reference to the NAF as the forum is minimal as it is only mentioned in a footnote to the agreement.

While the Eighth Circuit has not directly addressed the issue, the Third, Seventh, and Eleventh Circuits have held that arbitration agreements selecting the NAF as arbitrator were enforceable and Section 5 of the FAA required the appointment of a substitute arbitrator in place of the NAF. *Green v. U.S. Cash Advance Illinois, LLC*, 724 F.3d 787, 793 (7th Cir. 2013); *Khan v. Dell, Inc.*, 669 F.3d 350 (3d Cir. 2012); *Pendergrast v. Sprint Nextel Corp.*, 691 F.3d 1224, 1236 n.13 (11th Cir. 2012).

The unavailability of the NAF to arbitrate this matter, does not make this Arbitration Agreement unenforceable.

**4. Conclusion**

Accordingly, based upon the foregoing, this Court recommends Defendants, Motion to Dismiss and to Compel Arbitration (ECF No. 4) be **GRANTED.** It is further recommended, pursuant to FAA § 5, the Court order the parties to select a mutually agreeable arbitrator, submitting the proposed arbitrator to the Court within thirty (30) days for appointment. In the event the parties are unable to agree on a proposed arbitrator, the Court should order the parties to each submit a list of proposed arbitrators and should then appoint an arbitrator from those lists.

**The parties have fourteen (14) days from receipt of this Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger** *de novo* **review by the district court.** *See Thompson v. Nix*, **897 F.2d 356, 357 (8th Cir. 1990).**

**ENTERED this 19th day of June, 2015.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
U.S. MAGISTRATE JUDGE